# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**KRISTINE KITTREDGE**                                                                                  **PLAINTIFF**

**V.**                                      **NO. 4:23-cv-00845-ERE**

**MARTIN O'MALLEY, Commissioner**
**of the Social Security Administration**                                                **DEFENDANT**

### ORDER[1]

### I.   Introduction:

On October 5, 2020, Kristine Kittredge filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income benefits. *Tr. 22-34, 179-200*. In both applications, she alleged disability beginning on March 25, 2020. *Id*. Ms. Kittredge appeared via telephone at a hearing before an administrative law judge ("ALJ") on August 23, 2021. *Tr. 179*. In a September 9, 2021, decision, the ALJ denied Ms. Kittredge's applications. *Tr. 179-200*. On May 11, 2022, the Appeals Council remanded the case for reevaluation.[2] *Tr. 206-209*.

After a second hearing, an ALJ denied Ms. Kittredge's applications. *Tr. 22-34*. The Appeals Council declined to review the decision, making the ALJ's decision

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 6*.

[2] Among other things, the Appeals Council ordered that a second ALJ give further consideration to the impact of Ms. Kittredge's migraines on her ability to work. *Id*.

the final decision of the Commissioner. *Tr. 1-7.* Ms. Kittredge now seeks judicial review.

For the reasons stated below, the Court reverses the ALJ's decision and orders an immediate award of benefits to Ms. Kittredge.

## II.  **The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Ms. Kittredge had not engaged in substantial gainful activity since the alleged onset date of March 25, 2020.[3] *Tr. 25*. At step two, the ALJ determined that Ms. Kittredge has the following severe impairments: chronic migraine headaches; bilateral occipital neuralgia; cervicalgia; left knee degenerative joint disease, status post-arthroscopy with chondroplasty and lateral release; a left tibial tubercle osteotomy with anterior medialization and left knee medial retinacular imbrication/reefing and hardware removal; bilateral chondromalacia patella, status post-surgical procedures, hypertension; tachycardia; Ehlers-Danlos syndrome;[4] obesity; attention deficit hyperactivity disorder, and major depressive disorder. *Id*.

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[4] Ehlers-Danlos syndrome is a group of inherited disorders that affect connective tissues — primarily skin, joints, and blood vessel walls. *https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125*

The ALJ found that Ms. Kittredge did not have an impairment or combination of impairments meeting or medically equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 26-28*. Next, the ALJ determined that Ms. Kittredge has the residual functional capacity ("RFC") to perform light work with the following limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) no lower extremity foot control operation duties; (3) only occasional bilateral overhead reaching duties; (4) no exposure to heat temperature extremes; (5) only moderate noise levels in the workplace; (6) no work that requires being outdoors; (7) she can understand, remember, and carry out only simple instructions; and (8) she can have no more than frequent interaction with coworkers and supervisors. *Tr. 28*.

At step four, the ALJ found that Ms. Kittredge is unable to perform any past relevant work. *Tr. 32*. Relying on the testimony from a Vocational Expert ("VE"), and considering Ms. Kittredge's age, education, work experience, and RFC, the ALJ found that significant numbers of jobs existed in the national economy that she could perform, such as marker and cafeteria attendant. *Tr. 34*. Therefore, the ALJ found that Ms. Kittredge was not disabled. *Id.*

### III. <u>Discussion</u>:

#### A. **Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Ms. Kittredge's Arguments for Reversal

Ms. Kittredge contends that evidence supporting the ALJ's decision is less than substantial. She argues that the ALJ did not give proper consideration to her

migraine headaches or left knee impairment. The Court finds support for Ms. Kittredge's argument with respect to migraines.

Migraines and their side-effects plagued Ms. Kittredge for years. She saw multiple neurologists and tried a variety of treatments, to no avail. In October 2019, Ms. Kittredge told her neurologist that she had 20 migraines per month, lasting days at a time, with associated neck pain, nausea, vertigo, and photophobia. *Tr. 623-634*. She was diagnosed with chronic intractable migraine. *Tr. 628-629*. Ms. Kittredge described her headaches as constant, intense, burning, exploding, throbbing, and pulsating; she said they never really went away. *Tr. 1850-1851*. She was taking Fioricet, Maxalt, Zanaflex, and Zofran. *Id.* She felt sick within minutes of taking her medicine and said that treatment was not effective. *Tr. 624*. The neurologist noted that Ms. Kittredge made many trips to her PCP and urgent care for migraines. *Id.* In October 2019, the neurologist said that the "chronic migraines are greatly interfering with [Ms. Kittredge's] home/work/social life." *Tr. 629*.

Ms. Kittredge returned to her neurologist in March 2020 and stated that she had been experiencing an intractable migraine for one month, and that she had missed over three days of work in the last month as a result. *Tr. 634*. Toradol, Tizanidine, and Phenergan did not help. *Id*. Ms. Kittredge was fatigued but having problems sleeping. *Tr. 638*. Ms. Kittredge also was having problems with

medication side effects: lisinopril made her sweat so she switched to Olmesartan and that made migraines worse. *Tr. 634, 640*.

In July 2020 Ms. Kittredge told her neurologist that she was having 20 migraines per month, and that heat, bright light, and noise were triggers. *Tr. 644*. The diagnosis was "intractable migraine, tension headaches, and occipital neuralgia of the left side." *Tr. 650-651*. Beyond her prescribed treatments, Ms. Kittredge tried lying down in a dark room with ice packs, but that did not help. *Tr. 428*. She said that lights, sounds, music, and moving her head compromised her daily activities, which were minimal. *Tr. 416-421*.

Ms. Kittredge had a brain MRI in March 2021, which indicated T2/FLAIR hyperintensity in the subcortical right frontal lobe, an indicator of migraines. *Tr. 1195*. At a May 2021 visit to the neurology clinic, the provider noted intractable headaches, and that medication had failed to provide relief. *Tr. 1193*. In July 2021, Ms. Kittredge went to the ER for weakness, dizziness, and nausea that began right after she got Botox as treatment for her migraines, which had been prescribed by her neurologist. *Tr. 1828-1832*. She reported thoracic back pain and difficulty with her speech. *Id*.

Ms. Kittredge returned to the neurology clinic in March 2022, complaining of severe headache, despite occipital nerve blocks. *Tr. 1841-1842*. She reported swelling and pain after the Botox. *Id*. She had some problems with hearing, as well

as sinus issues. *Id*. The neurologist told her to come back for 10 units of Xeomin as soon as possible.[5] *Tr. 1842*. None of the migraine treatments worked.

Ms. Kittredge did everything her doctors told her to do for migraines and they seemed to only get worse. The ALJ acknowledged that Ms. Kittredge had experienced migraines since 2014 and that treatment protocols did little to alleviate her migraines. *Tr. 30*. She suffered daily, and she missed work because of her condition. Her neurologist said that it affected all aspects of her life. Various side effects from Ms. Kittredge's treatment made things worse. And she wound up in the ER after Botox prescribed by her neurologist.

The Appeals Council remand after the first ALJ's decision ordered further consideration of Ms. Kittredge's migraines and their effect on the RFC.[6] *Tr. 208-209*. The second ALJ decision, in discussing Ms. Kittredge's migraines, indicated that he credited the medical evidence as well as Ms. Kittredge's statement that her migraine triggers included fluorescent lights, noise, heat, and straining her neck. *Tr. 30*. As a result, he modified her RFC for light work to limit her exposure to heat, light, and noise. *Tr. 28-30*. Conspicuously absent from the RFC determination, however, is any discussion of how the severity and frequency of Ms. Kittredge's

---

[5] Xeomin is an alternative botulinum toxin product for muscle stiffness and migraines. https://www.webmd.com/drugs/2/drug-154593/xeomin-intramuscular/details

[6] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

migraines, as reported in the medical records, would impact her ability to work. Ms. Kittredge also testified as to the non-functionality caused by her frequent migraines. Unless Ms. Kittredge's testimony was completely disregarded or discredited, her migraines would interfere with her ability to attend or remain at work to a degree that would prevent her from holding any job. The VE acknowledged that an individual would not be employable if migraines caused the person to be off-task for two hours in a work day or to miss work four times each month. *Tr. at 78*.

The ALJ brushed this issue aside with a generalized statement that Ms. Kittredge's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Tr. at 29*. To support this, the ALJ suggested Ms. Kittredge's testimony could be disregarded because she could prepare meals, perform light cleaning, watch TV, shop, drive, spend time with family, and care for her pets. *Tr. at 31*. But the ALJ made no effort to address Ms. Kittredge's hearing testimony as to the limited frequency her migraines permitted her to engage in these activities. See *Tr. at 71* (during a normal month, can go to the store three times and help with household chores twice).

As described above, Ms. Kittredge's medical records document the intensity, persistence and limiting effects of her migraines and corroborate her hearing testimony. The ALJ suggested that the medical records supported disregarding Ms.

8

Kittredge's description of the limiting impact of her migraines. However, he failed to point to anything in the medical records to suggest that Ms. Kittredge's migraine headaches were less debilitating than she reported.

The RFC for light work, with limitations, fails to account for Ms. Kittredge's frequent, severe migraines and how they would functionally impact her ability to hold down a job. In fact, one of the two jobs the VE found Ms. Kittredge could perform was cafeteria attendant. *Tr. 78*. It is hard to imagine a busy, noisy cafeteria as being amenable to someone with chronic, severe migraines. The bigger picture issue, however, is the RFC's failure to consider or address the impact of Ms. Kittredge's frequent and severe migraines on her ability to hold down any job.

This Court does not often order an immediate award of benefits. But, as the Eighth Circuit has held, an order remanding for an immediate award of benefits is appropriate when "the clear weight of the evidence" points to a conclusion that the claimant is disabled and further administrative review "would merely delay receipt of benefits." *Yandell v. Berryhill*, No. 3:16-CV-132-JTR (E.D. Ark. Aug. 15, 2017) (awarding benefits) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001)); see also *Stalkup v. Astrue*, 662 F.Supp.2d 1122 (S.D. Iowa 2009) (reversing and awarding benefits where the evidence was "transparently one-sided" in favor of disability). When cases stretch on for years with multiple hearings and remands, such as this one, award of benefits is the proper remedy, if supported by the evidence.

Unconscionable delays in these cases "create an unfair 'heads we win; tails we play again' system of disability benefits adjudication." *Ingram v. Barnhart*, 303 F.3d 890, 894 (8th Cir. 2002).

The record is undisputed regarding the frequency, severity and impact of Ms. Kittredge's migraines. Due to the overwhelming evidence that Ms. Kittredge is disabled, the Court declines to give the Commissioner a third bite at the apple and directs an immediate award of benefits.

## IV.  **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in finding that Ms. Kittredge was not disabled.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and REMANDED with instructions to grant an immediate award of benefits to Ms. Kittredge.

Dated 27 February 2024.

_____
UNITED STATES MAGISTRATE JUDGE